**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **VS.** | : | **3:CR-06-191** |
| | : | **(JUDGE VANASKIE)** |
| **WILLIAM D'ELIA** | : | |

## MEMORANDUM

Before the Court are nine pretrial motions filed by the Defendant, William D'Elia.  On May 24, 2006, D'Elia was indicted for conspiring to commit money laundering and attempting to cover-up the conspiracy.  In a superseding indictment returned on October 17, 2006, a federal grand jury charged D'Elia with nine counts related to money laundering as well as other counts alleging attempts to cover-up the money laundering schemes, threats of physical force against witnesses cooperating with the government, and solicitation to kidnap and murder an individual in the Dominican Republic for money.

D'Elia has moved to suppress statements he made to cooperating witnesses after he was indicted on May 24, 2006, as violating his Sixth Amendment right to counsel or, in the alternative, to sever for trial purposes the four separate criminal schemes charged in the superseding indictment.  (Dkt. Entry 54.)  He has also moved to dismiss the Sixteenth Count of the superseding indictment (charging him with soliciting another person to use physical force on the individual in the Dominican Republic) as improperly ambiguous.  (Dkt. Entry 70.)  In addition to these two motions, D'Elia has filed seven discovery-related motions seeking disclosure of

evidence or challenging the admissibility of evidence.  (Dkt. Entries 56, 58, 60, 62, 64, 66, and 68.)

The Court will grant D'Elia's motion to suppress statements only in regards to incriminating statements that he made after he was indicted on May 24, 2006, that pertain to those charges contained in the original indictment.  The Court will also sever charges related to D'Elia's alleged money laundering schemes from the charges related to threats of physical violence.  D'Elia's motion to dismiss Count Sixteen will be denied.  In regard to D'Elia's discovery-related motions, the government will be required to produce any exculpatory evidence, impeachment evidence, or evidence of other crimes, wrongs, and acts that it intends to introduce at trial.  All other discovery-related motions will be denied.

## I.  BACKGROUND[1]

On May 24, 2006, a federal grand jury returned a sealed indictment against D'Elia.  (Dkt. Entry 1.)  In the indictment, D'Elia was charged with conspiring to commit money laundering of the drug proceeds of a co-conspirator, John Doncses, in violation of 18 U.S.C. § 1956(h) (Count One); conspiracy to commit (a) obstruction of justice in violation of 18 U.S.C. § 1503, (b) perjury before a federal grand jury in violation of 18 U.S.C. §§ 1621, 1623, and (c) subornation

---

[1]  The parties appear to agree on the facts relevant to the motion to suppress. Neither party has requested an evidentiary hearing, submitted proposed findings of fact, or filed evidentiary records.  The parties may, of course, notify the Court if any of its recitation of the facts is incorrect in any material way.

of perjury in violation of 18 U.S.C. § 1622 (Count Two).[2]

On May 31, 2006, D'Elia was arrested, arraigned, and released on bond.  D'Elia has

been represented by counsel since he was indicted on May 24, 2006.  (See Def.'s Br. Supp.

Mot. Suppress (Dkt. Entry 55) at 5.)  He has never waived his right to counsel.

On October 17, 2006, a grand jury returned an eighteen-count superseding indictment,

organized into four "schemes."[3]  (Superseding Indictment (Dkt. Entry 35).)  The first scheme is

related to the charges presented in the initial indictment.  Specifically, the government charges

that, from the summer of 1999 to January 12, 2005, D'Elia conspired with Doncses, Frank

Pavlico, III, and Louis Pagnotti, III, to launder the marijuana-trafficking proceeds of Doncses in

violation of 18 U.S.C. § 1956(h) (Count One).  (Superseding Indictment (Dkt. Entry 35) at 1-15.)

D'Elia is also charged with intending to cover-up the money laundering scheme (Counts Two,

Three, and Four).  (Id. at 1-12, 16-24.)

In the second scheme, the government charges that, from May 2, 2006 until May 31,

2006, D'Elia and Pavlico laundered cocaine-trafficking proceeds of fictional associates of

---

[2]  The indictment included an additional count that sought forfeiture of the assets D'Elia purportedly derived from money laundering pursuant to 18 U.S.C. § 982 (Count Five).  In addition, the original indictment included a co-defendant, Richard Smallacombe.(Counts Three and Four).  Smallacombe has since pleaded guilty to separate charges under a plea agreement, and he is no longer a party to this criminal prosecution.

[3]  In Count Eighteen, the government seeks forfeiture of D'Elia's assets derived from all the schemes set forth in the superseding indictment pursuant to 18 U.S.C. § 982. (Superseding Indictment (Dkt. Entry 35) at 60-62.)

Pavlico in violation of 18 U.S.C. §§ 1956(a)(3)(A)-(B) (Counts Five, Six, and Seven).  (Id. at 25-32.)  Pavlico was a cooperating witness for the government throughout this time.  (Id. at 25.)

In the third scheme, D'Elia is charged with laundering the drug proceeds of "Cooperating Witness Two" (who was not involved in the first two schemes), and wiring money to the Dominican Republic to assist Cooperating Witness Two to smuggle illegal aliens into the United States from May 4, 2006, to July 10, 2006, in violation of 18 U.S.C. §§ 1956(a)(3)(A)-(B) and 3147 (Counts Eight, Nine, Ten, Eleven, and Twelve).  (Id. at 33-46.)  D'Elia continued to launder money under this scheme in violation of 18 U.S.C. §§ 2, 401(3), 1952(a)(3), and 3147, after his arrest and release on bail on May 31, 2006 (Counts Thirteen, Fourteen, and Fifteen). (Id. at 47-52.)

In the fourth scheme, the government charges that D'Elia and Cooperating Witness 2 solicited each other to kidnap and murder other persons.  (Id. at 52-59.)  In particular, D'Elia is charged with soliciting money from Cooperating Witness Two in exchange for D'Elia kidnaping and murdering "Sabino Cotto" in the Dominican Republic in violation of 18 U.S.C. §§ 373 and 3147 (Count Sixteen).  (Id. at 52-58.)  In Count Seventeen, D'Elia is charged with asking Cooperating Witness Two to kidnap and murder Pavlico and "John Doe" (another person D'Elia suspected was cooperating with the government) in violation of 18 U.S.C. §§ 2, 1512(a)(1)-(2), and 3147.  (Id. at 52–59.)

D'Elia has filed nine pretrial motions.  In his first motion, D'Elia seeks to suppress

4

statements he made to cooperating witnesses after he was indicted, asserting that the

statements were obtained in violation of his Sixth Amendment right to counsel.  (Dkt. Entry 54.)

As an alternative to exclusion of the statements, he requests severance of the different

schemes for trial.  He also filed two other motions challenging the government's evidence,

including a motion for a pretrial determination of the sufficiency of the government's proof that

D'Elia was a participant in the charged conspiracies and for a determination of what

statements, if any, are admissible under each conspiracy scheme (Dkt. Entry 60), and a motion

for a hearing on the accuracy, authenticity, and admissibility of audio tape recordings and the

accuracy of transcripts of the audio tape recordings. (Dkt. Entry 64.)

Additionally, D'Elia filed motions to compel the government to disclose evidence under

the Jencks Act, 18 U.S.C. § 3500, and Rule 26.2 of the Federal Rules of Criminal Procedures

(Dkt. Entry 56); provide him with written notice of uncharged misconduct pursuant to Rules

404(b) and 609 of the Federal Rules of Evidence (Dkt. Entry 58); produce statements of non-

testifying co-conspirators pursuant to Rule 16(a)(1)(A) of the Federal Rules of Criminal

Procedure (Dkt. Entry 62); provide him with a written notice of hearsay statements the

government intends to admit pursuant to Rule 807 of the Federal Rules of Evidence (Dkt. Entry

66); and disclose exculpatory evidence and evidence material to impeaching or bearing upon

the credibility of government witnesses.  (Dkt. Entry 68.)  Lastly, D'Elia has moved for dismissal

of Count Sixteen of the superseding indictment at improperly vague.  (Dkt. Entry 70.)  All the

motions have been fully briefed, and are now ripe for resolution.

## II.  DISCUSSION

### A.  Motion to Suppress (Dkt. Entry 54)

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall

enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

In Massiah v. United States, 377 U.S. 201, 206 (1964), the Supreme Court held that deliberate

elicitation of incriminating statements by a government agent after the defendant had been

indicted and without the defendant's attorney being present violates the Sixth Amendment.

Accordingly, the Massiah Court suppressed statements made by an indicted criminal defendant

outside the presence of his attorney to a co-conspirator who was cooperating with the

government.  Id.

The Sixth Amendment right to counsel, however, is offense specific.  McNeil v.

Wisconsin, 501 U.S. 171, 175 (1991).  It only attaches to the specific charges brought through

an adversary judicial criminal proceeding, such as an indictment.  Id..  As a consequence, the

right cannot "be invoked once for all future prosecutions," for it does not extend to police

investigations of "new or additional crimes after an individual is formally charged with one

crime."  Id. at 175-76; see also Maine v. Moulton, 474 U.S. 159, 180 n.16 (1985) ("Incriminating

statements pertaining to other crimes, as to which the Sixth Amendment right has not yet

attached, are, of course, admissible at a trial of those offenses.")  In Texas v. Cobb, 532 U.S.

6

162, 167-71 (2001), the Supreme Court again stressed that a defendant's Sixth Amendment right to counsel attaches only to *pending charges*, and does not attach to investigations of other uncharged crimes, even factually related crimes.

D'Elia seeks to suppress statements he made to cooperating witnesses after May 24, 2006, the date on which he was indicted for conspiring to launder Doncses' marijuana-trafficking proceeds.  Analysis of D'Elia's claim is complicated by the fact that he does not specify which statements he seeks to suppress.  Based on the parties' briefs, though, it appears that D'Elia seeks to suppress incriminating statements related to all four schemes made after the initial indictment, but before the superseding indictment was returned.

The government states that it does not plan to introduce any post-indictment statements made by D'Elia to a cooperating witness concerning the first scheme (the scheme to launder Doncses' marijuana-trafficking proceeds).  (United States' Br. Opp. Mot. Suppress (Dkt. Entry 83) at 28 ("None of the statements made by D'Elia post-indictment that related to the First Scheme will be introduced at trial.")  Indeed, such statements likely would run afoul of D'Elia's Sixth Amendment right to counsel.[4]

---

[4]  In its brief, the government sometimes appears to suggest that D'Elia's Sixth Amendment right to counsel attached only when he was arrested on May 31, 2006, not when he was indicted on May 24, 2006.  This position seems to be refuted by the Supreme Court finding that an adversary judicial criminal proceeding includes an indictment.  See McNeil, 501 U.S. at 175; United States v. Gouveia, 467 U.S. 180, 188 (1984).  This issue, however, was not fully briefed by the parties and the government may assert it later if it believes an indicted defendant who has not yet been arrested lacks a Sixth Amendment right to counsel.

7

The government contends that statements made by D'Elia in relation to the other schemes are not protected by the Sixth Amendment, as they are statements pertaining to distinct criminal schemes separate from the charges set forth in the May 24, 2006 indictment. D'Elia argues that the government's classification of its prosecution as four separate schemes is a fiction.  In actuality, he argues, the second, third, and fourth schemes are simply a continuation of the conduct charged in the first indictment.  Accordingly, D'Elia asserts, any incriminating statement he made after he was indicted on May 24, 2006, should be suppressed.

D'Elia's arguments are unpersuasive.  It is apparent from a review of the superseding indictment that the second, third, and fourth schemes involve "new or additional crimes" when compared to the criminal conduct set forth in the May 24, 2006 indictment.  In the second scheme, D'Elia is charged with conspiring with Pavlico to launder the proceeds from a fictional cocaine-trafficking racket that is separate from the first scheme (Doncses' marijuana-trafficking proceeds).  According to the superseding indictment, D'Elia agreed to participate in the second scheme nearly six years after he agreed to participate in the first scheme.  (See Superseding Indictment (Dkt. Entry 35) at 4, 25.)   The money transfers between D'Elia and Pavlico under each scheme were kept distinct from each other.  Furthermore, unlike the first scheme, Pagnotti was not involved in the second scheme.  Though D'Elia and Pavlico used a similar mechanism for laundering the drug proceeds in each scheme, the schemes were separate crimes.

8

It is even more clear that the crimes alleged in the third and fourth schemes constitute "new or additional crimes" from the May 24, 2006 indictment. Pavlico was not involved in the third scheme, as D'Elia instead laundered money with Cooperating Witness Two (who had no involvement in the first two schemes). The third scheme, moreover, operated differently from the schemes with Pavlico, as D'Elia wired money given to him by Cooperating Witness Two to a bank in the Dominican Republic for a fee, rather than repaying Cooperating Witness Two "interest" payments. The fourth scheme involves charges based on criminal conduct (solicitation to kidnap and murder) that occurred *after* the May 24, 2006 indictment. Thus, it involves new crimes that were not charged in the May 24, 2006 indictment.

When D'Elia made the incriminating statements related to the second, third, and fourth schemes, adversarial proceedings had not been commenced against D'Elia on those crimes. Consequently, his motion to suppress the statements under the Sixth Amendment's right to counsel will be denied.

Alternatively, D'Elia asks for four separate trials in this matter, one for each scheme. Rule 14(a) of the Federal Rules of Criminal Procedure provides a vehicle for challenging offenses that have been joined under Rule 8(a). The government asserts that joinder of all the counts in the four schemes was proper under Rule 8(a), because the three money laundering schemes "are of the same or similar character," and the kidnap and murder solicitations were "connected with" these schemes. See Rule 8(a) ("The indictment or information may charge a

9

defendant in separate counts with 2 or more offenses if the offenses charged – whether

felonies or misdemeanors or both – are of the same or similar character, or are based on the

same act or transaction, or are connected with or constitute parts of a common scheme or

plan").  D'Elia does not directly dispute the government's position on this point, but, relying

upon Rule 14(a),[5] argues that: (1) the "complex nature of the evidence involved" in the money

laundering schemes would make one trial confusing, and (2) consideration of the murder

solicitations with the money laundering schemes would "substantially prejudice the jury."

(Def.'s Br. Supp. Mot. Suppress and Sever (Dkt. Entry 55) at 10.)

D'Elia's argument concerning a joint trial of the money laundering schemes is

unpersuasive.  The charged money laundering schemes are actually quite simple.  In the first

two schemes, D'Elia used the same system for laundering money: he received large cash

payments from Pavlico and then paid him back laundered money in the form of "interest"

payments.  As both schemes used the same money laundering process, consideration of both

schemes would not add to juror confusion.  Indeed, the type of evidence introduced in these

---

[5] Rule 14(a) provides:

> If the joinder of offenses or defendants in an indictment, an
> information, or a consolidation for trial appears to prejudice a
> defendant or the government, the court may order separate trials of
> counts, sever the defendants' trials, or provide any other relief that
> justice requires.

10

two schemes would be substantially similar.

The third money laundering scheme simply involved wire transfers of money to a bank in the Dominican Republic.  Consideration of this scheme in addition to the other schemes would not unduly confuse the jury.  Moreover, trying all three schemes separately would add significant costs to the government and hinder judicial economy.  See United States v. Monte, Criminal Action No. 06-07, 2007 WL 1704779, at *5-6 (W.D. Pa. June 13, 2007) (finding severance of counts not appropriate when separate trials would add cost and expense to the government and hinder judicial economy).  Consequently, the Court will not sever the three money laundering schemes (Counts One through Fifteen).

The Court, however, agrees that consideration of the schemes to solicit kidnaping and/ or murder would be prejudicial to D'Elia under Rule 14(a).  The government argues that evidence related to the money laundering schemes would be admissible in a trial for the murder solicitation counts as relevant to showing motive, intent, identity, knowledge, or plan under Rule 404(b) of the Federal Rules of Evidence.  That may well be the case.  The Court, however, is not convinced that the murder solicitation counts would be admissible *in a trial for the money laundering schemes*.  While our Court of Appeals has recognized that "'[t]hreat evidence' may be admitted to show consciousness of guilt" in an underlying offense, United States v. Guerrero, 803 F.2d 783, 785 (1986), the Court also acknowledged that "a trial judge is given broad discretion in weighing the probative value of evidence against its potential prejudicial

11

effect" under Rule 403.

In this case, the Court does not find that the probative value of the murder solicitation counts to the money laundering schemes substantially outweighs the danger of unfair prejudice to warrant admission of the evidence under Rule 403.[6]  First, it should be noted that the allegation that D'Elia offered to kidnap and murder "Sabino Cotto" in Count Sixteen has little, if any, probative value in proving any of the money laundering schemes, as Cotto had no involvement in the money laundering scheme with Cooperating Witness Two and absolutely no connection to the money laundering schemes with Pavlico.  There is a substantial danger, moreover, that threat evidence may provoke a jury's "'instinct to punish'" or "'base its decision on something other than the established propositions in the case.'"  Guerrero, 803 F.2d at 785-86 (quoting Carter v. Hewitt, 617 F.2d 961, 972 (3d Cir.1980)).

While evidence that D'Elia solicited Cooperating Witness Two to murder Pavlico and another person he suspected of cooperating with the government may have some probative value in showing that D'Elia was involved in the money laundering schemes by indicating he had a consciousness of guilt, the Court is not convinced the probative value is substantial.  The

---

[6]  The government also asserts that the evidence from the murder solicitation scheme is admissible as impeachment evidence in the trial of the money laundering schemes.  (United States' Br. Opp. Mot. Suppress & Sever (Dkt. Entry 83) at 30.)  This is true, however, only if D'Elia testifies regarding the money laundering schemes.  D'Elia, as is his right, has not yet indicated that he will testify.  Thus, the government's argument that the evidence would come in for impeachment purposes is merely speculative.

limited probative value of the evidence does not *substantially* outweigh the danger of unfair prejudice that the jury will improperly consider his bad character in determining whether he was involved in the money laundering schemes.  <u>See</u> Gregory v. United States, 369 F.2d 185, 189 (D.C. Cir. 1966).  Because the Court finds that D'Elia would be prejudiced by joining the money laundering schemes with the murder solicitation scheme, the Court will grant D'Elia's motion to sever the murder solicitation counts (Counts 16 and 17) from the rest of the superseding indictment.

    **B.**    <u>**Motion re Proof of Conspiracies (Dkt. Entry 60)**</u>

        D'Elia asks the Court to make a pretrial determination of the sufficiency of the government's proof that he was a participant in the alleged conspiracies to warrant application of the coconspirator exception to the hearsay rule, set forth in Rule 801(d)(2)(e) of the Federal Rules of Evidence.  It is well settled that "[b]efore admitting a coconspirator's statement over an objection [at trial] . . . [t]here must be evidence that there was a conspiracy involving the declarant and the nonoffering party, and that the statement was made 'during the course and in furtherance of the conspiracy.'"  Bourjaily v. United States, 483 U.S. 171, 175 (1987).  A pretrial hearing, however, is not essential.[7]  See United States v. Gambino, 926 F.2d 1355, 1360-61

---

      [7]  Our Court of Appeals has indicated a preference that the government "prove the existence of the conspiracy and each defendant's connection with it by independent evidence *before admitting hearsay declarations of an alleged coconspirator* [at trial]."  Continental Group, 603 F.2d at 456-57 (emphasis added).  This does not mean, however, that the government must present the requisite evidence before it actually seeks to admit a coconspirator's hearsay

(3d Cir. 1991); United States v. Continental Group, Inc., 603 F.2d 444, 456 (3d Cir. 1979)

(affirming that the trial judge has discretion in determining *when* the government must present

proof of the preliminary requirements of Rule 801(d)(2)(E)).  Accordingly, the Court will not

grant D'Elia's motion.

      **C.**  **Motion re: Audio Tape Recordings (Dkt. Entry 64).**

      D'Elia asks the Court to conduct a hearing on the "accuracy, authenticity, and

audibility"of audio tape recordings that allegedly involve him.  He also wishes an opportunity to

challenge the accuracy of transcripts and to suppress impertinent or prejudicial material.  As the

government concedes, this is D'Elia's right under United States v. Starks, 515 F.2d 112 (1975).

The government, however, contends that a hearing on the audio tape recordings would be

premature at this time, as counsel for Defendant and the government may be able to resolve

the dispute without the Court's intervention.  Indeed, as the government points out, D'Elia has

not identified what parts of the recordings are inaudible or what portions of the government-

produced transcripts may be inaccurate.  The government also suggests that transcription of

the audio tape recordings is not complete, further indicating that a hearing would be premature

at this time.  The Court is persuaded that an evidentiary hearing on the audio tape recordings

---

statement into evidence at trial.  This Court can take up the matter at the time of trial.  At that
time, the Court will be in a better position to determine whether the government has presented
sufficient proof of the conspiracy and D'Elia's involvement.  If the evidence is insufficient, the
Court will decide then whether to conduct a preliminary hearing or rely on a proffer of evidence
by the government.

and transcripts is premature at this time.  If D'Elia and the government are unable to resolve their differences over the audio tape recordings and transcripts, D'Elia may reassert his motion for an evidentiary hearing.

**D.  Motion re: Jencks Material (Dkt. Entry 56)**

D'Elia asks the Court under the Jencks Act, 18 U.S.C. § 3500, and Rule 26.2 of the Federal Rules of Criminal Procedure to require the government to disclose Jencks Act material at least thirty (30) days prior to the commencement of trial.  The Third Circuit, though, has held that district courts lack the authority to compel early production of Jencks material. United States v. Murphy, 569 F.2d 771, 773 (3d Cir. 1978).  Observing that "the Jencks Act flatly states that disclosure of prior statements by government witnesses may not be compelled 'until said witness has testified on direct examination in the trial of the case,'" our Court of Appeals has explained that "[t]he blunt command of the statute together with the unequivocal legislative history has lead to unbroken precedent in the Courts of Appeals denying to District Courts the power to compel production of the statements of government witnesses until conclusion of their direct examination at the trial." Id. at 773; accord United States v. Merlino, 349 F.3d 144, 155 (3d Cir. 2003).  Likewise, Rule 26.2 requires disclosure only "[a]fter a witness . . . has testified on direct examination."  Accordingly, the request for early disclosure of Jencks Act material will

be denied.[8]  See United States v. Cummings, 400 F. Supp. 2d 822, 830 (W.D. Pa. 2005).

**E.  Motion re: Uncharged Misconduct and Prior Convictions (Dkt. Entry 58)**

D'Elia seeks an order compelling the government to provide him with written notice of

any uncharged misconduct evidence it intends to use either in its case in chief, under Rule

404(b) of the Federal Rules of Evidence, or for the purpose of impeaching Defendant should he

elect to testify, under Rule 609.  (Def.'s Mot. to Compel (Dkt. Entry 58).)  Under Rule 404(b),

"[e]vidence of other crimes, wrongs, or acts" by a person may be admissible for limited

purposes, "provided that upon request by the accused, the prosecution in a criminal case shall

provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice

on good cause shown, of the general nature of any such evidence it intends to introduce at

trial."  Other than requiring pretrial notice, no "specific time limits" or "form of notice" are

required by the rule.  Fed. R. Evid. 404(b) advisory committee's notes to 1991 amendments.

This Court agrees with other courts that have found ten (10) days prior to trial to be sufficient.

See United States v. Evangelista, 813 F. Supp. 294, 302 (D.N.J. 1993); United States v.

Williams, 792 F. Supp. 1120, 1133-1134 (S.D. Ind. 1992).

---

[8]  Notwithstanding the absence of any legal obligation, government counsel is encouraged to deliver Jencks Act material to defense counsel sufficiently in advance of the trial to obviate trial interruptions solely to permit defense counsel to review the Jencks Act material. Notably, counsel for the government has stated that it will provide Jencks material three (3) days before trial.  (United States' Br. Opp. Def.'s Mot. Early Production of Jencks Material (Dkt. Entry 84) at 5 n.4.)

While the Court will refrain from setting forth a specific form of notice, the government is cautioned that the Court is skeptical that its production of audio recordings which allude to some of the "uncharged misconduct that the Government could use at trial," (United States' Br. Opp. Mot. Compel (Dkt. Entry 85) at 3), provides sufficient notice.  Rather, the government must provide separate notice to D'Elia of *the precise* evidence it *intends* to introduce at trial under Rule 404(b).

With regards to D'Elia's request for notice under Rule 609, the Court agrees with the government's position that it is under no obligation to provide notice of evidence it intends to introduce under the rule unless it is evidence of a conviction more than ten (10) years old.  See Fed. R. Evid. 609(b).  As the government has represented that it does not currently plan to present evidence of a conviction more than ten (10) years old, but will "give the required sufficient advance written notice" under the rule if it decides to present such evidence, (See United States' Br. Opp. Mot. Compel (Dkt. Entry 85) at 5-6), there is no basis for issuing an order compelling the government to do so.

### F.  Motion re: Statements of Non-Testifying Coconspirators (Dkt. Entry 62)

D'Elia requests an order compelling the government to provide him with the statements of all non-testifying co-conspirators under Rule 16(a)(1)(A) of the Federal Rules of Criminal Procedure.  Rule 16(a)(1)(A), by its face, only pertains to oral statements "made by the defendant."  While a minority of courts had interpreted the rule to apply to oral statements made

17

by co-conspirators, see United States v. Angello, 367 F. Supp. 444, 448-49 (E.D.N.Y. 1973),

subsequent rulings by each of the Courts of Appeals that has addressed the issue have

rejected this interpretation.  See, e.g., United States v. Tarantino, 846 F.2d 1384, 1418 (D.C.

Cir. 1988); In re United States, 834 F.2d 283, 287 (2d Cir. 1987); United States v. Orr, 825 F.2d

1537, 1541 (11th Cir. 1987); United States v. Roberts, 811 F.2d 257, 258 (4th Cir.1987).  The

district courts within the Third Circuit have declined to hold that coconspirators' statements are

subject to production as statements of the defendant.  See, e.g., United States v. Bledsoe, No.

2:05CR370, 2006 WL 3098770, at *2 (W.D. Pa. Oct. 30, 2006); United States v. Breslin, No.

96-CR- 202, 1996 WL 622778, at *1 (E.D. Pa. 1996); United States v. Giampa, 904 F. Supp.

235, 284-85 (D.N.J. 1995).  In light of this impressive array of authority, and the absence of any

persuasive ruling favoring D'Elia's position, D'Elia's motion will be denied.

### G.  Motion re: Written Notice of Hearsay Statements (Dkt. Entry 66)

D'Elia asks that the government provide notice of any hearsay evidence it intends to

admit into evidence under the residual exception of Rule 807 of the Federal Rules of Evidence.

At this point, the government has asserted that it does not intend to offer any evidence under

Rule 807.  (United States' Br. Opp. Mot. Compel (Dkt. Entry 87) at 4.)  Thus, it presently has no

disclosure obligations under Rule 807.  Of course, if at a subsequent point in time the

government determines that it does intend to offer a statement into evidence at trial under Rule

807, the Court expects the government to comply with the notice requirements of Rule 807.

18

**H.  Motion to Disclose Exculpatory and Impeachment Evidence (Dkt. Entry 68)**

D'Elia has presented a broad motion for disclosure of exculpatory evidence and

evidence bearing upon the credibility of a government witness.  (Dkt. Entry 68.)  Generally,

there is no general constitutional right to discovery in a criminal case.  United States v. Mariani,

7 F. Supp. 2d 556, 561 (M.D. Pa. 1998) (citing Weatherford v. Bursey, 429 U.S. 545, 559

(1977)).  Courts, however, have carved out some limited exceptions to this rule to protect a

defendant's due process rights.

In Brady v. Maryland, 373 U.S. 83, 87 (1963), the Supreme Court held that "the

suppression by the prosecution of evidence favorable to an accused upon request violates due

process where the evidence is material either to guilt or to punishment, irrespective of the good

faith or bad faith of the prosecution."  Brady therefore requires the government to disclose

material exculpatory evidence.  This includes impeachment evidence related to a prosecution

witness.  Giglio v. United States, 405 U.S. 150, 154 (1972).

Our Court of Appeals has held that district courts have discretion to order pretrial

disclosure of Brady material "to ensure the effective administration of the criminal justice

system."  United States v. Higgs, 713 F.2d 39, 44 n.6 (3d Cir. 1983); see also United States v.

Starusko, 729 F.2d 256, 261 (3d Cir. 1984) (observing the court's "longstanding policy of

encouraging early production" in affirming the district court's decision to compel disclosure of

Brady material).  In deciding whether to order pretrial disclosure, courts distinguish between

19

"'(1) *exculpatory evidence*, which goes to the heart of the defendant's guilt or innocence; and (2) *impeachment evidence*, which may affect the jury's assessment of the credibility of a prosecution witness.'" Mariani, 7 F. Supp. 2d at 563 (quoting United States v. Beckford, 962 F. Supp. 780, 787-88 (E.D. Va.1997))  Generally, courts find the need for early disclosure is stronger for exculpatory evidence as compared to impeachment evidence, as impeachment evidence "does not require counsel to be given substantial time in advance to review." Id. (observing, as well, that impeachment material "falls outside the Third Circuit's longstanding tradition of encouraging early disclosure of Brady material that is purely exculpatory").

With this in mind, the Court will grant D'Elia's motion insofar as he seeks exculpatory evidence that is material under Brady.  This, however, does not mean the government must disclose all evidence in its possession that "might prove helpful to the defense." Kyles v. Whitley, 514 U.S. 419, 437 (1995).  Rather, the government is obligated to disclose exculpatory evidence that creates "'a reasonable doubt' as to the defendant's culpability." Mariani, 7 F. Supp. 2d at 562 (quoting United States v. Agurs, 427 U.S. 97, 112 (1976)).

The government need not disclose Giglio materials, however, until three (3) days before trial.  To the extent that any exculpatory materials or statements may contain Giglio or Jencks Act material, the government may redact such additional information in its disclosures. See Beckford, 962 F. Supp. at 795 (approving of the redaction of Giglio material from the early disclosure of Brady material).

20

**I.  Motion to Dismiss Count Sixteen (Dkt. Entry 70)**

Lastly, D'Elia has moved for dismissal of Count Sixteen of the superseding indictment as duplicitous.  (Dkt. Entry 70.)  Count Sixteen charges that from October 5, 2006 through October 12, 2006, D'Elia:

> with the intent that another person engage in conduct constituting a felony that has an element the use, attempted use, and threatened use of physical force against the person of another in violation of the laws of the United States, to wit: kidnap and murder, and that the said solicitation occurred under circumstances strongly corroborative of that intent, solicited, commanded, induced, and otherwise endeavored to persuade such other person to engage in such conduct.

(Superseding Indictment (Dkt. Entry 35) at 57-58.)

D'Elia complains that the lack of specificity in the count regarding the target of the physical force between Sabino Cotto, Frank Pavlico, and "John Doe" could erroneously lead to him being found guilty without the jurors agreeing on the target of the crime.  For instance, a jury could unanimously find him guilty under the count, even though six jurors determined that the target of the physical force was Cotto and six jurors found the target of the abuse Pavlico.  Absent dismissal of the count, D'Elia requests that the government specify its alleged victim under the count.  (Def.'s Br. Supp. Mot. Dismiss Count Sixteen (Dkt. Entry 71) at 4.)

The government has represented that the count only applies to the alleged plan to kidnap and murder Cotto in the Dominican Republic.  (United States' Br. Opp. Mot. Dismiss Count Sixteen (Dkt. Entry 82) at 8.)  Based on the government's representation, D'Elia's motion

21

to dismiss appears moot.  The Court will ensure that any vagueness regarding the alleged target in Count Sixteen will be clarified for the jury.  Therefore, D'Elia's motion will be denied.

## III.  CONCLUSION

As a result of the ruling on the severance issue, separate trials will be held on the money laundering and solicitation to commit murder schemes.  The money laundering schemes trial should proceed first.  A scheduling conference shall be held to discuss the timing of the trials and related issues.  An appropriate Order follows.

**s/ Thomas I. Vanaskie**
Thomas I. Vanaskie
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| VS. | : | 3:CR-06-191 |
| | : | (JUDGE VANASKIE) |
| WILLIAM D'ELIA | : | |

## ORDER

**NOW, THIS 24th DAY OF AUGUST, 2007,** for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

1.  Defendant's motion to suppress statements he made in violation of his Sixth Amendment right to counsel or, in the alternative, to sever the counts for trial (Dkt. Entry 54) is **GRANTED IN PART AND DENIED IN PART** as follows:

(a) Defendant's motion to suppress is granted only in regards to incriminating statements he made to government agents or witnesses cooperating with the government after he was initially indicted on May 24, 2006, that pertained to the charges in the original indictment;

(b) Counts Fifteen and Sixteen of the Superseding Indictment are severed from the remaining counts of the Superseding Indictment;

(c) In all other respects, Defendant's motion is denied.

2.  Defendant's motion to compel the government to disclose evidence under the Jencks

1

Act, 18 U.S.C. § 3500, and Rule 26.2 of the Federal Rules of Criminal Procedures (Dkt. Entry 56) is **DENIED.**

3. Defendant's motion to provide him with written notice of uncharged misconduct pursuant to Rules 404(b) and 609 of the Federal Rules of Evidence (Dkt. Entry 58) is **GRANTED IN PART AND DENIED IN PART** as follows:

(a) the United States must produce all evidence as required under Rule 404(b) of the Federal Rules of Evidence ten (10) days prior to trial;

(b) Defendant's request for evidence under Rule 609 is denied given the government's representation that it does not intent to introduce evidence under this rule.

4. Defendant's motion for a pretrial determination of the sufficiency of the government's proof that D'Elia was a participant in the charged conspiracies and for a determination of what statements, if any, are admissible (Dkt. Entry 60) is **DENIED.**

5. Defendant's motion for production of statements of non-testifying co-conspirators (Dkt. Entry 62) is **DENIED.**

6. Defendant's motion for a hearing on the accuracy, authenticity, and admissibility of audio tape recordings and the accuracy of transcripts of the audio tape recordings (Dkt. Entry 64) is **DENIED.**

7. Defendant's motion for disclosure pursuant to Rule 807 of the Federal Rules of Evidence (Dkt. Entry 66) is **DENIED.**

2

8.  Defendant's motion for disclosure of exculpatory evidence and evidence material to impeaching or bearing upon the credibility of government witnesses (Dkt. Entry 68) is **GRANTED IN PART AND DENIED IN PART** as follows:

(a) the United States must produce any material exculpatory evidence within twenty (20) days of the date of this Memorandum and Order;

(b) the United States must produce any evidence material to impeaching or bearing upon the credibility of government witnesses under Giglio v. United States, 405 U.S. 150, 154 (1972), three (3) days prior to trial.

9.  Defendant's motion for dismissal of Count Sixteen of the superseding indictment as duplicitous (Dkt. Entry 70) is **DENIED**.

10.  A scheduling conference will be conducted in Chambers on **September 13, 2007 at 2:00 p.m.**

**s/ Thomas I. Vanaskie**
Thomas I. Vanaskie
United States District Judge

3